## STATE v. LOUISIANA STORES CO., Inc.*
### No. 4815.

Court of Appeal of Louisiana.
Second Circuit.

May 4, 1934.

J. B. Dawkins, of Monroe, for appellant.

Fink & Fink, of Monroe, for appellee.

MILLS, Judge.

This is a proceeding brought by the state, through its Supervisor of Public Accounts, to enforce the forfeiture of a lot of cigarettes and smoking tobacco found unstamped in the warehouse of defendant in Monroe, La.

The petition alleges that defendant had in its possession at its place of business, for the purpose of being sold, a lot of cigarettes and smoking tobacco, without stamps affixed as required by Act No. 4 of 1932. That in accordance with the provisions of said act, the agent of the Supervisor of Public Accounts seized the unstamped tobacco and now prays that defendant be ordered to show cause why it should not be forfeited and sold.

In answer to the rule which duly issued, defendant admits the possession of the tobacco and that it was unstamped, but avers that it owns the chain of retail stores known as "Jitney-Jungle Stores," and merely maintains at Monroe a warehouse and distribution center for them. That it had ordered the required stamps which it intended to affix to the tobacco before it was offered for sale. That despite the fact that the agent for the supervisor was informed of these facts and verified same by calling his superior at Baton Rouge, by whom he was informed that the stamps had been ordered and were being forwarded, he persisted in making the seizure, which defendant contends is illegal under the circumstances and should be dissolved and its merchandise returned.

The testimony bears out the allegations of the answer that the retail stores are owned by defendant company, and that it maintains the warehouse in Monroe for distribution purposes only to its stores, and that no tobacco is sold from it. The agent had made a partial inspection of the premises without discovering the unstamped tobacco, which was stored in unbroken cartons separate from the stamped tobacco intended for immediate distribution. Before completing the search, he inquired if there was any unstamped tobacco and was frankly told that there was, and shown that seized. It was explained that the tobacco was being held awaiting the arrival of the stamps which had been ordered. This statement was verified as alleged above. The agent saw no tobacco being sold and none displayed for sale in the warehouse.

Part of the tobacco arrived by rail and was delivered October 30th, and the remainder arrived and was delivered November 3d. The stamps were ordered November 6th, and were received November 9th. The defendant's representatives testify that there was no intention to sell or distribute the tobacco until the stamps had been affixed.

In the lower court there was judgment rejecting the demands of plaintiff, and releasing the seizure, from which plaintiff has perfected this appeal.

Section 8, Act No. 4 of 1932, states its object to be: "It is the intent and purpose of this Act to levy a sales tax on all cigars, cig-

*Rehearing denied June 4, 1934.

arettes and smoking tobacco sold, used or consumed in this State and to collect same from the dealer who first distributes, sells, uses or consumes same in the State of Louisiana."

A "dealer" is defined to be one who imports tobacco for distribution, sale, or consumption in this state; a wholesale dealer, as one who sells to retailers; and a retail dealer as every dealer other than a wholesale dealer who sells or offers for sale cigars, cigarettes, or smoking tobacco. irrespective of quantity or the amount or number of sales.

Under these provisions defendant would be classed as a retail dealer, but owing to the character of its business, its merchandise is not offered for sale until it is distributed from the main warehouse. Goods in the warehouse are held for eventual sale but are not so offered or subject to sale while in the warehouse.

Section 3 of the act provides that the stamps must be attached to the smallest package sold at retail before the dealer "sells, offers for sale, handles, removes or otherwise disturbs or distributes the same." This requirement seems to recognize the impossibility of affixing the stamps without breaking up the original packages and cartons, and appears to require the affixing of the stamps only when the small packages are sold, offered for sale, disturbed, or distributed.

Section 7 requires that a retail dealer must affix the stamps on each individual package and cancel same immediately upon receipt by him of the unstamped taxable articles. While technically defendant is a retail dealer, its goods are not offered for retail sale until distributed to its various retail stores, for which it is also required by the act to obtain a permit. Until that time they are simply held in storage for distribution.

Section 17 provides for seizure and forfeiture where unstamped taxable tobacco is found in the possession of a person or firm, "for the purpose of being sold, or removed by him, in violation of the provisions of this Act, or with the design to avoid payment of said taxes." And, "It is further the intent and purpose of this proceeding that the forfeiture and sale of said seized property shall be and operate as a penalty for the violation of this Act as aforesaid."

█ It therefore appears that a forfeiture should only be decreed where there is a purpose and intention of violating the Act.

It is provided in section 7 that the finding of taxable articles in the place of business of a retail dealer, unstamped, creates a prima facie presumption that such articles are kept in violation of the provisions of the act.

█ The supervisor is not compelled to make a seizure in all cases where unstamped tobacco is found, as in section 20 he is empowered to waive forfeiture where a violation of the act is unintentional or without the intention to defraud the state of its revenue.

█ Forfeitures and penalties are not favored in the law. In this case there is only a prima facie showing of an intent to defraud which is completely refuted by the testimony in the case and the admitted facts. We furthermore agree with the learned trial judge that there was not in any event such a substantial violation of the act that would justify a forfeiture and the infliction of a penalty.

The judgment appealed from is affirmed.